IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

- - -

THE UNITED STATES OF AMERICA, : 2:  22-cr-00139
                              :
                              : August 11, 2022
        versus                :
                              : (Pages 1 - 65)
                              :
TYRONE COX, FREDERICK WENDELL :
MCCRAY, and KEVIN WILLIAM     :
DUKES                         :
              Defendants.     :

- - -

TRANSCRIPT OF PLEA
BEFORE THE HONORABLE BRUCE HOWE HENDRICKS,
UNITED STATES DISTRICT COURT JUDGE

- - -

**A P P E A R A N C E S:**

For the Government:          ALLESSANDRA E. STEWART
                             US Attorneys Office
                             151 Meeting Street, Suite 200
                             Charleston, SC 29401-2238

For Defendant Cox:           ALAN DAVID TOPOREK
                             Uricchio Howe Krell Jacobson
                             Toporek Theos and Keith
                             PO Box 399
                             Charleston, SC 29402

For Defendant McCray:        CHRISTOPHER L. MURPHY
                             Resnick and Louis PC
                             146 Fairchild Street, Suite 130
                             Charleston, SC 29492

For Defendant Dukes:         SHARNAISHA NAKI RICHARDSON-BAX
                             The Bax Law Firm PA
                             10 Sams Point Way, Suite B-1
                             PMB 138
                             Beaufort, SC 29907

Court Reporter:                    LISA D. SMITH, RPR, CRR
                                   Official Court Reporter
                                   P.O. Box 835
                                   Charleston, SC 29401


     Proceedings recorded by mechanical stenography,
transcript produced by computer.

1      *(The following proceedings commenced at 2:00 p.m.)*

2              THE COURT:  Thank you.  Take your seats, please.

3              DEPUTY CLERK:  Y'all haven't heard anything from

4      Ms. Richardson-Bax?

5              MS. STEWART:  Your Honor, I know that she was on her

6      way.  She did have to drive two hours.  And so, that's why

7      there was some confusion as to whether or not her client was

8      going to be able to be transported today.  So, I anticipate

9      that maybe she's in traffic.

10             DEPUTY CLERK:  I did e-mail her just to let her know

11     that it was definitely going forward.

12             MS. STEWART:  And I let her know as well.

13             THE COURT:  But her client is in the courtroom here?

14             MS. STEWART:  Yes.

15             THE COURT:  Okay.

16             MS. STEWART:  And, your Honor, it would be the

17     government's preference, for expedience, to do all three

18     defendants together.

19             THE COURT:  Well, it's for my expedience as well.

20             Does anybody have her phone number?  Can we try to

21     call her right quick?

22             MS. STEWART:  She texted me, so I can try to call

23     her.

24             THE COURT:  In the meantime -- yes, sir?

25             MR. MURPHY:  If I could approach?  It's about a

1   separate case, just a procedural question for you.

2           THE COURT:  Yeah.  Yeah.

3           *(Off-the-record discussion.)*

4           THE COURT:  So, what's the word, ma'am?

5           MS. STEWART:  Your Honor, I had a text from defense

6   counsel who said that she was running 15 minutes behind due to

7   traffic.  And I told her that we were waiting for her.

8           THE COURT:  Okay.  Well, I hate for you guys to get

9   held up.  I don't mind going forward.  I think we should go

10  forward, and let's do what we can.  And then, you know, if

11  you've got another AUSA who can stick around --

12          MS. STEWART:  No.  I mean, I'll stick around,

13  your Honor.

14          THE COURT:  I don't want to have to do it twice,

15  but --

16          MR. TOPOREK:  Your Honor, I have no objection.

17          MR. MURPHY:  And that's fine, Judge.

18          THE COURT:  I've got another hearing myself at 3:00.

19          MS. STEWART:  Oh, okay.

20          THE COURT:  Sorry about that, Marshals, you know,

21  bringing them all in here.

22          MR. TOPOREK:  Ma'am, would you like me to give this

23  to the clerk?

24          THE COURT:  Yeah.  Thank you.  I may go ahead and

25  start in about one minute though and then do hers.

1      MR. TOPOREK:  I've heard you've got a graduation this
2  afternoon.
3      THE COURT:  We do.  You're all welcome to come.
4  Yeah, we're looking forward to that.
5      MR. TOPOREK:  That is great.
6      THE COURT:  Thank you.
7      We're going to go ahead and get started.  And I don't
8  know if the marshals want to keep the defendant in the
9  courtroom whose lawyer is not here.  Whatever suits you all.
10  I really appreciate y'all going to the effort here.  So, it's
11  whatever, but I'm going to go ahead and proceed.
12      We're going to do them all at once -- two of them at
13  once?
14      MS. STEWART:  That's fine, your Honor.
15      THE COURT:  All right.  Yep.  Let's go ahead and do
16  that.  And we're pleading to indictments, correct?
17      MS. STEWART:  Yes, your Honor.
18      THE COURT:  Not informations?
19      MS. STEWART:  Yes, your Honor.
20      THE COURT:  Okay.
21      MS. STEWART:  And as a housekeeping matter, the
22  government did move to dismiss Count 19 of the indictment.
23      THE COURT:  Okay.
24      MS. STEWART:  And we would just ask that that be
25  granted before the defendants enter their pleas.

1          THE COURT:  It's granted.

2          And do we have copies of the plea agreements down

3     there, Madam Clerk?

4          MR. MURPHY:  It's straight-up, Judge.  No plea

5     agreements.

6          THE COURT:  No plea agreements for anybody?

7          MR. MURPHY:  No, ma'am.

8          THE COURT:  Okay.  All right.  Let's go ahead, Madam

9     Clerk.  And let's have -- the defendants that are pleading,

10    let's just have them stand up to the podium next to their

11    lawyers.

12         DEPUTY CLERK:  All right.  So, this would be Mr.

13    Frederick McCray and Mr. Tyrone Cox?

14         MR. MURPHY:  Yes, ma'am.

15         DEPUTY CLERK:  Okay.

16         MS. STEWART:  And, your Honor, I don't know if you

17    need me to call the case, but --

18         THE COURT:  Yeah, in a second.  Let's just let them

19    get situated.  So, it's Mr. McCray on the left standing next

20    to his counsel.

21         All right.  So, go ahead and swear them in, Madam

22    Clerk.

23         DEPUTY CLERK:  Yes, ma'am.

24         (Defendants sworn.)

25         THE COURT:  Okay.  So, I'm going to go from left to

1    right, Mr. Murphy.  And you represent Mr. Cox.

2            And, Mr. Toporek -- wait.

3            Mr. Murphy, you represent Mr. McCray?

4            MR. MURPHY:  That's correct, yes.

5            THE COURT:  And, Mr. Toporek, you represent Mr. Cox.

6    And I'm going to go from left to right.

7            So, Mr. Murphy, have you been able to communicate

8    just fine with your client?

9            MR. MURPHY:  I have, your Honor.

10           THE COURT:  And your client, for the record, is Mr.

11   Tyrone Cox.

12           And let me ask.  Madam U.S. Attorney, did you call

13   the case in full?

14           MS. STEWART:  I did not, your Honor.

15           THE COURT:  Go ahead.  I'm sorry.

16           MS. STEWART:  Your Honor, the United States calls the

17   matter of the United States vs. Frederick McCray and Tyrone

18   Cox; case number 2:  22-cr-139.

19           THE COURT:  Okay.  And so, you've been able to

20   communicate just fine with your client, Mr. Murphy?

21           MR. MURPHY:  I have, your Honor.

22           THE COURT:  And that's Mr. McCray.

23           And, Mr. Toporek, you've been able to communicate

24   just fine with your client, Mr. Cox?

25           MR. TOPOREK:  I have, your Honor.

1         THE COURT:  And, Mr. Murphy, have you explained to

2    your client the charge or charges contained in the indictment

3    and the possible punishment and his constitutional rights,

4    including the right to a jury trial?

5         MR. MURPHY:  I have, your Honor.

6         THE COURT:  And, Mr. Toporek, have you done the same?

7         MR. TOPOREK:  Yes, ma'am.

8         THE COURT:  And, in your opinion, does your client

9    understand the charges, the punishment, and his rights, Mr.

10   Murphy?

11        MR. MURPHY:  He does, your Honor.

12        THE COURT:  And, Mr. Toporek?

13        MR. TOPOREK:  Yes, ma'am, he does.

14        THE COURT:  And how does your client indicate he

15   wishes to plead, Mr. Murphy?

16        MR. MURPHY:  Guilty, your Honor.

17        THE COURT:  And, Mr. Toporek?

18        MR. TOPOREK:  He wishes to plead guilty, your Honor.

19        THE COURT:  And do you agree with that decision, Mr.

20   Murphy?

21        MR. MURPHY:  I do, your Honor.

22        THE COURT:  And, Mr. Toporek, do you agree with that

23   decision on behalf of Mr. Cox?

24        MR. TOPOREK:  Yes, ma'am.

25        THE COURT:  All right.  And from your own

investigation of the facts and circumstances of this case, do

you feel that the government could produce sufficient evidence

to convince a jury of his guilt beyond a reasonable doubt, and

that if he were to stand trial, his conviction would be

probable?

MR. MURPHY:  I do, your Honor.

THE COURT:  And, Mr. Toporek?

MR. TOPOREK:  Yes, ma'am, your Honor.

THE COURT:  And, Mr. Murphy, has your client been

ordered to submit to a mental examination to determine his

competency?

MR. MURPHY:  No, ma'am.

THE COURT:  And, Mr. Toporek?

MR. TOPOREK:  No, ma'am.

THE COURT:  And y'all are free to take your masks

down when you're talking, if that helps.  I know it's

uncomfortable.  And your clients can as well if they want

while they're talking, that's fine.  And just put them back on

when we're done, all right?

Do you have any doubt as to your client's competency

to plead, Mr. Murphy?

MR. MURPHY:  I do not, your Honor.

THE COURT:  And, Mr. Toporek?

MR. TOPOREK:  No, ma'am, I don't.

THE COURT:  Okay.  So, Mr. McCray, and Mr. Cox, you

are both now under oath. And if you answer any of my
questions falsely, your answers could later be used against
you in another prosecution for making a false statement or
perjury.

Do you understand, Mr. McCray?

DEFENDANT MCCRAY: Yes, ma'am.

THE COURT: And, Mr. Cox?

DEFENDANT COX: Yes, ma'am.

THE COURT: And I've been informed that both of you
wish to change the pleas you previously entered of not guilty
before the U.S. Magistrate Judge to guilty.

Is that correct, Mr. McCray?

DEFENDANT MCCRAY: Yes, ma'am.

THE COURT: And, Mr. Cox?

DEFENDANT COX: Yes, ma'am.

THE COURT: But before I can accept your pleas, I've
got to make sure that they're made freely and voluntarily, so
I'm going to ask you some questions. If you don't understand
the questions, just let me know so I can explain them to you.
And you all can stop and talk to your lawyers about any matter
at any time during this proceeding. And just let me know,
raise your hand, and I'll let you all talk privately, if
that's what you need to do.

Do you understand that, Mr. McCray?

DEFENDANT MCCRAY: Yes, ma'am.

1       THE COURT:  And, Mr. Cox?

2       DEFENDANT COX:  Yes, ma'am.

3       THE COURT:  So, Mr. McCray, how old are you?

4       DEFENDANT MCCRAY:  Forty-one.

5       THE COURT:  And, Mr. Cox?

6       DEFENDANT COX:  Forty-one.

7       THE COURT:  And where were you born, Mr. McCray?

8       DEFENDANT MCCRAY:  Charleston, South Carolina.

9       THE COURT:  All right.  Is this the lawyer for --

10  that we're missing?

11      MS. STEWART:  Yes, your Honor.

12      THE COURT:  All right.  Well, let's scratch and start

13  all over again.  Bring her on up.  Let's go.

14      MS. STEWART:  Your Honor, do you wish me to re-call

15  it?

16      THE COURT:  Yes.

17      MS. STEWART:  Your Honor, recalling the matter of

18  United States vs. Frederick McCray, Tyrone Cox, and Kevin

19  Dukes; Case No. 2:  22-cr-139.

20      THE COURT:  Go ahead and swear them in.

21      *(Defendants sworn.)*

22      THE COURT:  All right.  So, now, Mr. Murphy, it's

23  easier for me to just do it all over again.  We hadn't gotten

24  that far.

25          You've been able to communicate just fine with your

1   client, Mr. McCray, right?

2           MR. MURPHY:  I have, your Honor.

3           THE COURT:  All right.  And, Ms. Bax, have you been

4   able to communicate just fine with your client, Mr. Dukes?

5           MS. RICHARDSON-BAX:  Yes, your Honor.

6           THE COURT:  And, Mr. Toporek, on behalf of Mr. Cox?

7           MR. TOPOREK:  Yes, ma'am, your Honor.

8           THE COURT:  And have you explained to your client the

9   charge or charges contained in the indictment, the possible

10  punishment, and his constitutional rights, including the right

11  to a jury trial, Mr. Murphy?

12          MR. MURPHY:  Yes, ma'am.

13          THE COURT:  And, Ms. Bax?

14          MS. RICHARDSON-BAX:  Yes, your Honor.

15          THE COURT:  And, Mr. Toporek?

16          MR. TOPOREK:  I have, your Honor.

17          THE COURT:  And in your opinions, do your clients

18  understand the charges, the punishment, and their rights?

19          Mr. Murphy?

20          MR. MURPHY:  He does.

21          THE COURT:  Ms. Bax?

22          MS. RICHARDSON-BAX:  Yes, your Honor.

23          THE COURT:  And, Mr. Toporek?

24          MR. TOPOREK:  Mr. Cox does, your Honor.

25          THE COURT:  Thank you.

1    And how does your client indicate he wishes to plead,

2 Mr. Murphy.

3         MR. MURPHY:  Guilty, your Honor.

4         THE COURT:  And, Ms. Bax?

5         MS. RICHARDSON-BAX:  Guilty, your Honor.

6         THE COURT:  And, Mr. Toporek?

7         MR. TOPOREK:  Guilty, your Honor.

8         THE COURT:  And do you agree with that decision, Mr.

9 Murphy?

10         MR. MURPHY:  I do.

11         THE COURT:  Ms. Bax?

12         MS. RICHARDSON-BAX:  Yes, your Honor.

13         THE COURT:  And, Mr. Toporek?

14         MR. TOPOREK:  Yes, ma'am, your Honor.

15         THE COURT:  And from your own investigation of the

16 facts and circumstances of this case, do you feel that the

17 government could produce sufficient evidence to convince a

18 jury of your client's guilt beyond a reasonable doubt, and if

19 they were to stand trial, that their conviction would be

20 probable, Mr. Murphy?

21         MR. MURPHY:  I do, your Honor.

22         THE COURT:  And, Ms. Bax?

23         MS. RICHARDSON-BAX:  Yes, your Honor.

24         THE COURT:  And, Mr. Toporek?

25         MR. TOPOREK:  Yes, ma'am, your Honor.

1          THE COURT:  And have any of your clients been ordered

2    to submit to a mental examination to determine their

3    competency to stand trial?

4          Mr. Murphy, on behalf of Mr. McCray?

5          MR. MURPHY:  No, your Honor.

6          THE COURT:  Ms. Bax, on behalf of Mr. Dukes?

7          MS. RICHARDSON-BAX:  No, your Honor.

8          THE COURT:  And, Mr. Toporek, on behalf of Mr. Cox?

9          MR. TOPOREK:  He as not, your Honor.

10         THE COURT:  And do you have any doubt as to your

11   client's competence to plead at this time, Mr. Murphy?

12         MR. MURPHY:  No, your Honor.

13         THE COURT:  Ms. Bax?

14         MS. RICHARDSON-BAX:  No, your Honor.

15         THE COURT:  And, Mr. Toporek?

16         MR. TOPOREK:  I don't, your Honor.

17         THE COURT:  And so, now Mr. McCray, Mr. Cox, and Mr.

18   Dukes, you are all now under oath.  And if you answer any of

19   my questions falsely, your answers could later be used against

20   you in another prosecution for perjury or making a false

21   statement.

22         Do you understand that, Mr. McCray?

23         DEFENDANT MCCRAY:  Yes, ma'am.

24         THE COURT:  Do you understand that, Mr. Dukes?

25         DEFENDANT DUKES:  Yes, ma'am.

1    THE COURT:  Do you understand that, Mr. Cox?

2    DEFENDANT COX:  Yes, ma'am.

3    THE COURT:  And I've been informed that each of you

4  wish to change the pleas you previously entered of not guilty

5  to guilty today.

6        Is that true, Mr. McCray?

7    DEFENDANT MCCRAY:  Yes, ma'am.

8    THE COURT:  And is that true, Mr. Dukes?

9    DEFENDANT DUKES:  Yes, ma'am.

10   THE COURT:  And, Mr. Cox?

11   DEFENDANT COX:  Yes, ma'am.

12   THE COURT:  Before I can accept these pleas, I'm

13 going to have to make sure that the pleas are made freely and

14 voluntarily from each of you, so I'm going to ask each of you

15 some questions.  And if you don't understand my questions, let

16 me know.  I'll try to explain it to you.  We can call a

17 timeout at any time, and I'll let you have a private

18 conversation with your lawyer if you need to talk to them

19 before you answer questions.

20        Do you understand that, Mr. McCray?

21   DEFENDANT MCCRAY:  Yes, ma'am.

22   THE COURT:  And, Mr. Dukes?

23   DEFENDANT DUKES:  Yes, ma'am.

24   THE COURT:  And, Mr. Cox?

25   DEFENDANT COX:  Yes, ma'am.

1      THE COURT:  All right.  So, Mr. McCray, how old are

2  you?

3      DEFENDANT MCCRAY:  Forty-one.

4      THE COURT:  Mr. Dukes?

5      DEFENDANT DUKES:  Thirty-six.

6      THE COURT:  Mr. Cox?

7      DEFENDANT COX:  Forty-one.

8      THE COURT:  And where were you born, Mr. McCray?

9      DEFENDANT MCCRAY:  Charleston, South Carolina.

10     THE COURT:  All right.  And, Mr. Dukes?

11     DEFENDANT DUKES:  Charleston, South Carolina.

12     THE COURT:  And, Mr. Cox?

13     DEFENDANT COX:  Charleston, South Carolina.

14     THE COURT:  How far did you get in school, Mr.

15  McCray?

16     DEFENDANT MCCRAY:  GED.

17     THE COURT:  And, Mr. Dukes?

18     DEFENDANT DUKES:  GED.

19     THE COURT:  Mr. Cox?

20     DEFENDANT COX:  Tenth grade.

21     THE COURT:  Tenth grade.  Okay.

22     And what was the last job you had, Mr. McCray?

23     DEFENDANT MCCRAY:  Allied Crawford Steel.

24     THE COURT:  And, Mr. Dukes?

25     DEFENDANT DUKES:  The Crab House downtown.

1          THE COURT:  And, Mr. Cox?

2          DEFENDANT COX:  At a landscaping company.

3          THE COURT:  Landscaping.  Have you ever been treated

4    for alcohol abuse or drug abuse, Mr. McCray?

5          DEFENDANT MCCRAY:  Yes, your Honor.

6          THE COURT:  When was that?

7          DEFENDANT MCCRAY:  Probably 2000, something like

8    that.

9          THE COURT:  About five years ago, 10 years ago, what?

10         DEFENDANT MCCRAY:  No, 2000.

11         THE COURT:  Oh, 2000.  That's 22 years ago.  Okay.

12   Are you taking anything now, any kind of medication or drugs

13   or alcohol?

14         DEFENDANT MCCRAY:  No, ma'am.

15         THE COURT:  All right.  And how about you, Mr. Dukes?

16   Have you ever been treated for alcohol abuse, or drug abuse,

17   or mental illness?

18         DEFENDANT DUKES:  No, ma'am.

19         THE COURT:  Mr. Cox?

20         DEFENDANT COX:  Yes, ma'am.

21         THE COURT:  You have?

22         DEFENDANT COX:  Yes, ma'am.

23         THE COURT:  And when was that?

24         DEFENDANT COX:  2019, I believe.

25         THE COURT:  All right.  Did you finish the program?

1          DEFENDANT COX:  No, ma'am.

2          THE COURT:  All right.  So, has any of you taken any

3  medication, drugs, or alcohol of any type in the last

4  24 hours, Mr. McCray?

5          DEFENDANT MCCRAY:  Yes, ma'am.

6          THE COURT:  What did you take?

7          DEFENDANT MCCRAY:  Diabetic medicine.

8          THE COURT:  Is that all?

9          DEFENDANT MCCRAY:  Yes, ma'am.

10          THE COURT:  Does it interfere with your ability to

11  think and understand what's going on here today?

12          DEFENDANT MCCRAY:  No, ma'am.

13          THE COURT:  And, Mr. Dukes, how about you?

14          DEFENDANT DUKES:  Diabetic medication and high blood

15  pressure medicine.

16          THE COURT:  Okay.  And does that interfere with your

17  ability to understand?

18          DEFENDANT DUKES:  No, ma'am.

19          THE COURT:  And, Mr. Cox?

20          DEFENDANT COX:  Yes, ma'am.

21          THE COURT:  What did you take?

22          DEFENDANT COX:  Zyrtec.

23          THE COURT:  What's that?

24          DEFENDANT COX:  For allergies.

25          THE COURT:  Okay.  Does it interfere with your

1    ability to understand what's going on?

2           DEFENDANT COX:  No, ma'am.

3           THE COURT:  So, are you aware of any physical,

4    emotional or nervous problem that might keep you from

5    understanding what you're doing, Mr. McCray?

6           DEFENDANT MCCRAY:  No, ma'am.

7           THE COURT:  And, Mr. Dukes?

8           DEFENDANT DUKES:  No, ma'am.

9           THE COURT:  And, Mr. Cox?

10          DEFENDANT COX:  No, ma'am.

11          THE COURT:  Do you understand that you're pleading

12   guilty, Mr. McCray?

13          DEFENDANT MCCRAY:  Yes, ma'am.

14          THE COURT:  Mr. Dukes?

15          DEFENDANT DUKES:  Yes, ma'am.

16          THE COURT:  Mr. Cox?

17          DEFENDANT COX:  Yes, ma'am.

18          THE COURT:  Do you agree, Mr. Murphy, that your

19   client knows and understands what he's doing?

20          MR. MURPHY:  I do agree, your Honor.

21          THE COURT:  And, Ms. Bax, do you agree that your

22   client knows and understands what he's doing?

23          MS. RICHARDSON-BAX:  Yes, your Honor.

24          THE COURT:  And, Mr. Toporek?

25          MR. TOPOREK:  He does, your Honor.

1        THE COURT:  It appears to me that Mr. McCray, Mr. Cox

2   and Mr. Dukes are all competent to plead to the charges, and I

3   so find for purposes of the record.

4        So, I'm going to ask each of you a series of

5   questions about your lawyers that we do for every time we do a

6   plea like this.  All right?

7        So, are you satisfied, Mr. McCray, with the manner in

8   which your lawyer has advised you and represented you?

9        DEFENDANT MCCRAY:  Yes, ma'am.

10        THE COURT:  Mr. Dukes?

11        DEFENDANT DUKES:  Yes, ma'am.

12        THE COURT:  Mr. Cox?

13        DEFENDANT COX:  Yes, ma'am.

14        THE COURT:  And have you talked with your lawyer for

15   as often and as long as you felt it was necessary for him to

16   represent you, Mr. McCray?

17        DEFENDANT MCCRAY:  Yes, ma'am.

18        THE COURT:  Mr. Dukes?

19        DEFENDANT DUKES:  Yes, ma'am.

20        THE COURT:  And, Mr. Cox?

21        DEFENDANT COX:  Yes, ma'am.

22        THE COURT:  Do you a need any more time to talk to

23   your lawyer, Mr. McCray?

24        DEFENDANT MCCRAY:  No, your Honor.

25        THE COURT:  Mr. Dukes?

1            DEFENDANT DUKES:  No, ma'am.

2            THE COURT:  Mr. Cox?

3            DEFENDANT COX:  No, ma'am.

4            THE COURT:  Did you understand all your conversations

5    with your lawyer, Mr. McCray?

6            DEFENDANT MCCRAY:  Yes, ma'am.

7            THE COURT:  Mr. Dukes?

8            DEFENDANT DUKES:  Yes, ma'am.

9            THE COURT:  And, Mr. Cox?

10           DEFENDANT COX:  Yes, ma'am, I do.

11           THE COURT:  Have your lawyers done everything for you

12   that you felt they could have or should have done, Mr. McCray?

13           DEFENDANT MCCRAY:  Yes, your Honor.

14           THE COURT:  Mr. Dukes?

15           DEFENDANT DUKES:  Yes, ma'am.

16           THE COURT:  And, Mr. Cox?

17           DEFENDANT COX:  Yes, ma'am.

18           THE COURT:  Have your lawyers failed to do anything

19   you asked him or her to do, Mr. McCray?

20           DEFENDANT MCCRAY:  No, ma'am.

21           THE COURT:  Mr. Dukes?

22           DEFENDANT DUKES:  No, ma'am.

23           THE COURT:  Mr. Cox?

24           DEFENDANT COX:  No, ma'am.

25           THE COURT:  Is there anything you wanted your lawyer

1  to do for you before today that he or she hasn't done, Mr.

2  McCray?

3          DEFENDANT MCCRAY:  No, ma'am.

4          THE COURT:  Mr. Dukes?

5          DEFENDANT DUKES:  No, ma'am.

6          THE COURT:  Mr. Cox?

7          DEFENDANT COX:  No, ma'am.

8          THE COURT:  Are you completely satisfied then with

9  your lawyer's services, Mr. McCray?

10          DEFENDANT MCCRAY:  Yes, ma'am.

11          THE COURT:  And, Mr. Dukes?

12          DEFENDANT DUKES:  Yes, ma'am.

13          THE COURT:  And, Mr. Cox?

14          DEFENDANT COX:  Yes, ma'am.

15          THE COURT:  Do you have any complaint at all that you

16  want to make to the Court about your lawyer, Mr. McCray?

17          DEFENDANT MCCRAY:  No, ma'am.

18          THE COURT:  Mr. Dukes?

19          DEFENDANT DUKES:  No, ma'am.

20          THE COURT:  Mr. Cox?

21          DEFENDANT COX:  No, ma'am.

22          THE COURT:  So, under the Constitution and laws of

23  the United States, you each have a right to plead not guilty.

24  And if you plead not guilty, you're entitled to a trial by a

25  jury, during which you'd have the right to the assistance of

your lawyer for your defense on the charges contained in the indictment.

Do you understand that, Mr. McCray?

DEFENDANT MCCRAY:  Yes, ma'am.

THE COURT:  And, Mr. Dukes?

DEFENDANT DUKES:  Yes, ma'am.

THE COURT:  And, Mr. Cox?

DEFENDANT COX:  Yes, ma'am.

THE COURT:  If you were to go to trial, you'd be presumed to be innocent, and the government would be required to prove you guilty by competent evidence and beyond a reasonable doubt before you could be found guilty, and you wouldn't have to prove that you were innocent.

Do you understand that, Mr. McCray?

DEFENDANT MCCRAY:  Yes, ma'am.

THE COURT:  Mr. Dukes?

DEFENDANT DUKES:  Yes, ma'am.

THE COURT:  Mr. Cox?

DEFENDANT COX:  Yes, ma'am.

THE COURT:  So, in the course of a trial, the witnesses for the government would have to come to court and testify in your presence, and your lawyers could cross-examine those prosecution witnesses, object to evidence offered by the government, and offer evidence on your behalf.

Do you understand that, Mr. McCray?

1    DEFENDANT MCCRAY:  Yes, ma'am.

2    THE COURT:  Mr. Dukes?

3    DEFENDANT DUKES:  Yes, ma'am.

4    THE COURT:  Mr. Cox?

5    DEFENDANT COX:  Yes, ma'am.

6    THE COURT:  At a trial you'd have the right to

7    testify if you chose to do so, but you'd also have the right

8    not to testify.  And no inference or suggestion of guilt could

9    be drawn from the fact that you didn't testify.

10    Do you understand that, Mr. McCray?

11    DEFENDANT MCCRAY:  Yes, ma'am.

12    THE COURT:  Mr. Dukes?

13    DEFENDANT DUKES:  Yes, ma'am.

14    THE COURT:  Mr. Cox?

15    DEFENDANT COX:  Yes, ma'am.

16    THE COURT:  At a trial you'd have the right to the

17    issuance of subpoenas for compulsory process to compel the

18    attendance of witnesses to come into court and testify for you

19    in your defense.

20    Do you understand that, Mr. McCray?

21    DEFENDANT MCCRAY:  Yes, ma'am.

22    THE COURT:  Mr. Dukes?

23    DEFENDANT DUKES:  Yes, ma'am.

24    THE COURT:  Mr. Cox?

25    DEFENDANT COX:  Yes, ma'am.

1    THE COURT: If you plead guilty and I accept your

2    plea, you're going to waive your right to that jury trial and

3    the other rights I've discussed, there won't be a trial, and

4    I'll enter a judgment of guilty and sentence you on the basis

5    of your guilty plea after considering a presentence report.

6            Do you understand that, Mr. McCray?

7            DEFENDANT MCCRAY: Yes, ma'am.

8            THE COURT: Mr. Dukes?

9            DEFENDANT DUKES: Yes, ma'am.

10           THE COURT: And, Mr. Cox?

11           DEFENDANT COX: Yes, ma'am.

12           THE COURT: And if you plead guilty and I accept your

13   plea, you'll also each have to give up your right not to

14   incriminate yourself, since I'm going to ask you some

15   questions about what you did in order to satisfy myself that

16   you're guilty as charged, and you'll each have to acknowledge

17   your guilt here in open court on the record.

18           Do you understand, Mr. McCray?

19           DEFENDANT MCCRAY: Yes, ma'am.

20           THE COURT: Mr. Dukes?

21           DEFENDANT DUKES: Yes, ma'am.

22           THE COURT: And, Mr. Cox?

23           DEFENDANT COX: Yes, ma'am.

24           THE COURT: So, you may have given an incriminating

25   statement in this case. If you plead guilty, you waive or

1  give up the right to contest or challenge whether any such

2  statement was made freely and voluntarily in accordance with

3  all your constitutional rights.

4          Do you understand that, Mr. McCray?

5          DEFENDANT MCCRAY:  Yes, ma'am.

6          THE COURT:  Mr. Dukes?

7          DEFENDANT DUKES:  Yes, ma'am.

8          THE COURT:  And, Mr. Cox?

9          DEFENDANT COX:  Yes, ma'am.

10          THE COURT:  You may have a defense or defenses to the

11  charges against you.  Do you understand that if you plead

12  guilty, you waive or give up any defense or defenses to the

13  charge against you, Mr. McCray?

14          DEFENDANT MCCRAY:  Yes, ma'am.

15          THE COURT:  Mr. Dukes?

16          DEFENDANT DUKES:  Yes, ma'am.

17          THE COURT:  And, Mr. Cox?

18          DEFENDANT COX:  Yes, ma'am.

19          THE COURT:  If you plead guilty and I accept your

20  plea, you may be required to forfeit or make restitution to

21  the victim or victims of your acts, either by payment of money

22  or in personal service, as might be directed by the Court.  If

23  restitution or personal service is ordered, failure to comply

24  could be a basis for revoking any period of supervision.

25          Do you understand that, Mr. McCray?

1          DEFENDANT MCCRAY:  Yes, ma'am.

2          THE COURT:  Mr. Dukes?

3          DEFENDANT DUKES:  Yes, ma'am.

4          THE COURT:  And, Mr. Cox?

5          DEFENDANT COX:  Yes, ma'am.

6          THE COURT:  Mr. McCray, are you on probation or

7  parole for anything else?

8          DEFENDANT MCCRAY:  No, ma'am.

9          THE COURT:  Mr. Dukes, are you on probation or parole

10  for anything else?

11          DEFENDANT DUKES:  No, ma'am.

12          THE COURT:  Mr. Cox?

13          DEFENDANT COX:  No, ma'am, I'm not.

14          THE COURT:  Do you understand that when you plead

15  guilty, you admit the truth of the charge that's been made

16  against you, Mr. McCray?

17          DEFENDANT MCCRAY:  Yes, ma'am.

18          THE COURT:  Mr. Dukes?

19          DEFENDANT DUKES:  Yes, ma'am.

20          THE COURT:  Mr. Cox?

21          DEFENDANT COX:  Yes, ma'am.

22          THE COURT:  And now that I've discussed your rights

23  with you, do you still want to plead guilty, Mr. McCray?

24          DEFENDANT MCCRAY:  Yes, ma'am.

25          THE COURT:  Mr. Dukes?

1         DEFENDANT DUKES:  Yes, ma'am.

2         THE COURT:  Mr. Cox?

3         DEFENDANT COX:  Yes, ma'am.

4         THE COURT:  So, the offense or offenses to which

5 you're pleading guilty are felonies.  And if your pleas are

6 accepted, you're going to be adjudged guilty of that offense.

7 And such adjudication may deprive you of valuable civil

8 rights, such as the right to vote, the right to hold public

9 office, the right to serve on a jury, and the right to ever

10 again possess a firearm or even a single piece of ammunition.

11         Do you understand that, Mr. McCray?

12         DEFENDANT MCCRAY:  Yes, ma'am.

13         THE COURT:  Mr. Dukes?

14         DEFENDANT DUKES:  Yes, ma'am.

15         THE COURT:  Mr. Cox?

16         DEFENDANT COX:  Yes, ma'am.

17         THE COURT:  Do any of these offenses carry a maximum

18 of 20 or more, Madam U.S. Attorney?

19         MS. STEWART:  Yes, your Honor.

20         THE COURT:  So, if the offense carries a maximum of

21 20 years or more, a probationary sentence is unavailable under

22 18 U.S.C. Section 3561(a)(1).

23         Do you understand that, Mr. McCray?

24         DEFENDANT MCCRAY:  Yes, ma'am.

25         THE COURT:  Mr. Dukes?

1       DEFENDANT DUKES:  Yes, ma'am.

2       THE COURT:  Mr. Cox?

3       DEFENDANT COX:  Yes, ma'am.

4       THE COURT:  If it's applicable, you may be required

5   to forfeit certain property to the government.

6       Do you understand, Mr. McCray?

7       DEFENDANT MCCRAY:  Yes, ma'am.

8       THE COURT:  Mr. Dukes?

9       DEFENDANT DUKES:  Yes, ma'am.

10      THE COURT:  Mr. Cox?

11      DEFENDANT COX:  Yes, ma'am.

12      THE COURT:  If you plead guilty, then I'll have to

13  determine your sentences under the Sentencing Reform Act of

14  1984.  And the Sentencing Commission has issued guidelines for

15  judges to follow in formulating sentences in criminal cases.

16  So, I'm required to consider the statutory factors under 18

17  Section 3553(a) as well as those advisory guidelines.

18      And have you and your lawyers talked about how those

19  guidelines and statutory factors might affect your sentence,

20  Mr. McCray?

21      DEFENDANT MCCRAY:  Yes, ma'am.

22      THE COURT:  And, Mr. Dukes?

23      DEFENDANT DUKES:  Yes, ma'am.

24      THE COURT:  And, Mr. Cox?

25      DEFENDANT COX:  Yes, ma'am.

1        THE COURT:  So, your lawyers can only give you an
2   estimate of what your guideline range might be.
3        Do you understand that the sentence I may impose may
4   be different from any estimate that your lawyer might have
5   given you, Mr. McCray?
6        DEFENDANT MCCRAY:  Yes, ma'am.
7        THE COURT:  Mr. Dukes?
8        DEFENDANT DUKES:  Yes, ma'am.
9        THE COURT:  And, Mr. Cox?
10       DEFENDANT COX:  Yes, ma'am.
11       THE COURT:  I'm not even going to be able to
12   determine the guideline sentence for your cases until after
13   the presentence report's been done, you and the government
14   have had a chance to look at the presentence report and object
15   if you wish.
16       Do you understand that, Mr. McCray?
17       DEFENDANT MCCRAY:  Yes, ma'am.
18       THE COURT:  And, Mr. Dukes?
19       DEFENDANT DUKES:  Yes, ma'am.
20       THE COURT:  Mr. Cox?
21       DEFENDANT COX:  Yes, ma'am.
22       THE COURT:  So, your sentencing ranges can be
23   affected by what is called relevant conduct.  And that means
24   you could be held accountable for conduct in which you were
25   directly involved in preparation for, during, or in the course

of attempting to avoid responsibility for the offense with which you've been charged. It also means that where you have been involved in any jointly undertaken criminal activity with other people, you will be held accountable for the conduct of other people if it was both in furtherance of your jointly undertaken activity, and reasonably foreseeable in connection with that activity.

Do you understand that, Mr. McCray?

DEFENDANT MCCRAY: Yes, ma'am.

THE COURT: And, Mr. Dukes?

DEFENDANT DUKES: Yes, ma'am.

THE COURT: And, Mr. Cox?

DEFENDANT COX: Yes, ma'am.

THE COURT: Did you all discuss that concept of relevant conduct with your lawyers, Mr. McCray?

DEFENDANT MCCRAY: Yes, ma'am.

THE COURT: Mr. Dukes?

DEFENDANT DUKES: Yes, ma'am.

THE COURT: Mr. Cox?

DEFENDANT COX: Yes, ma'am.

THE COURT: After it's been determined what guidelines will apply to your cases, then I've got the authority, in some circumstances, to impose a sentence that's either more severe or less severe than that called for by the guidelines.

1          Do you understand, Mr. McCray?

2          DEFENDANT MCCRAY:  Yes, ma'am.

3          THE COURT:  Mr. Dukes?

4          DEFENDANT DUKES:  Yes, ma'am.

5          THE COURT:  Mr. Cox?

6          DEFENDANT COX:  Yes, ma'am.

7          THE COURT:  Under some circumstances, you or the

8    government may have the right to appeal any sentence that I

9    might impose.

10          Do you understand, Mr. McCray?

11          DEFENDANT MCCRAY:  Yes, ma'am.

12          THE COURT:  Mr. Dukes?

13          DEFENDANT DUKES:  Yes, ma'am.

14          THE COURT:  Mr. Cox?

15          DEFENDANT COX:  Yes, ma'am.

16          THE COURT:  So, parole has been abolished, and if

17   you're sentenced to prison, you won't be released on parole.

18          Do you understand, Mr. McCray?

19          DEFENDANT MCCRAY:  Yes, ma'am.

20          THE COURT:  Mr. Dukes?

21          DEFENDANT DUKES:  Yes, ma'am.

22          THE COURT:  Mr. Cox?

23          DEFENDANT COX:  Yes, ma'am.

24          THE COURT:  So, under the Sentencing Reform Act, the

25   Court may order a term of supervised release to follow

imprisonment in any case. But the Court must order a term of

supervised release if a sentence of more than one year is

imposed or if it's required by statute.

        Do you understand that, Mr. McCray?

        DEFENDANT MCCRAY: Yes, ma'am.

        THE COURT: Mr. Dukes?

        DEFENDANT DUKES: Yes, ma'am.

        THE COURT: Mr. Cox?

        DEFENDANT COX: Yes, ma'am.

        THE COURT: So, when you're placed on supervised

release, you are restricted as to the places you might go and

the things you might do, and you must report to the

authorities on a regular basis.

        Do you understand that, Mr. McCray?

        DEFENDANT MCCRAY: Yes, ma'am.

        THE COURT: Mr. Dukes?

        DEFENDANT DUKES: Yes, ma'am.

        THE COURT: Mr. Cox?

        DEFENDANT COX: Yes, ma'am.

        THE COURT: If you were to violate any term or

condition of that supervised release, your supervision could

be revoked and you could be given more time in prison.

        Do you understand that, Mr. McCray?

        DEFENDANT MCCRAY: Yes, ma'am.

        THE COURT: Mr. Dukes?

1      DEFENDANT DUKES:  Yes, ma'am.

2      THE COURT:  Mr. Cox?

3      DEFENDANT COX:  Yes, ma'am.

4      THE COURT:  So, you've heard your lawyers tell me

5  that they've explained to you the charges against you, the

6  possible punishment, and your constitutional rights.  And they

7  say that you understand all these things.

8      Is that true, Mr. McCray?

9      DEFENDANT MCCRAY:  Yes, ma'am.

10      THE COURT:  Mr. Dukes?

11      DEFENDANT DUKES:  Yes, ma'am.

12      THE COURT:  Mr. Cox?

13      DEFENDANT COX:  Yes, ma'am.

14      THE COURT:  Do you understand what's going on here

15  this afternoon, Mr. McCray?

16      DEFENDANT MCCRAY:  Yes, ma'am.

17      THE COURT:  Mr. Dukes?

18      DEFENDANT DUKES:  Yes, ma'am.

19      THE COURT:  Mr. Cox?

20      DEFENDANT COX:  Yes, ma'am.

21      THE COURT:  Have you each received a copy of the

22  indictment, which is the written charges made against you in

23  this case, Mr. McCray?

24      DEFENDANT MCCRAY:  Yes, ma'am.

25      THE COURT:  Mr. Dukes?

1      DEFENDANT DUKES:  Yes, ma'am.

2      THE COURT:  Mr. Cox?

3      DEFENDANT COX:  Yes, ma'am.

4      THE COURT:  Have you discussed with your lawyers the

5   charges in the indictment and the case in general, Mr. McCray?

6      DEFENDANT MCCRAY:  Yes, ma'am.

7      THE COURT:  Mr. Dukes?

8      DEFENDANT DUKES:  Yes, ma'am.

9      THE COURT:  Mr. Cox?

10     DEFENDANT COX:  Yes, ma'am.

11     THE COURT:  Have you told your lawyer everything

12  about your case, Mr. McCray?

13     DEFENDANT MCCRAY:  Yes, ma'am.

14     THE COURT:  Mr. Dukes?

15     DEFENDANT DUKES:  Yes, ma'am.

16     THE COURT:  Mr. Cox?

17     DEFENDANT COX:  Yes, ma'am.

18     THE COURT:  So, I'd ask Madam U.S. Attorney to please

19  summarize the indictment and place the elements and the

20  penalties, including any minimum mandatories if there are any.

21     MR. TOPOREK:  Your Honor, may I ask the U.S. Attorney

22  a quick question off the record?

23     THE COURT:  Sure.  Uh-huh.

24     MR. TOPOREK:  Thank you.

25     *(Discussion off the record.)*

1          THE COURT:  Okay.  Y'all are all squared?

2          MR. TOPOREK:  Yes, ma'am.  Thank you.

3          THE COURT:  Madam U.S. attorney.

4          MS. STEWART:  Yes, your Honor.

5          The charges in the indictment -- I'll break them down

6     by defendant.  But McCray is charged in Count 1, which is a

7     conspiracy count.  He is charged with being attributable --

8     accountable to five kilograms of cocaine, 500 grams of

9     methamphetamine, and a quantity of heroin as part of this

10    conspiracy.

11         He is charged in Count 2 with possession with intent

12    to distribute 28 grams of cocaine base; and Count 3 with a

13    924(c) charge, which means carrying a firearm in furtherance

14    of a drug-trafficking crime; and Count 4, with felon in

15    possession of a firearm and ammunition; and then in Counts 16,

16    17, 18, 20, 21, 22, 23, 24 and 26, which are nine counts of

17    unlawful use of a communication facility.

18         Defendant Cox is charged in Count 1 of the conspiracy

19    with five kilograms of cocaine.  He is charged in Count 5 with

20    possession with intent to distribute 28 grams or more of

21    cocaine base, and also in Count 10 with the same charge.  He

22    is charged in Count 6 with a 924(c) charge for carrying a

23    firearm in furtherance of a drug-trafficking crime.  And he is

24    charged in Count 7 with felon in possession -- unlawful

25    possession of ammunition.  He is also charged in Counts 21,

26, 27 and 28, which is four counts of unlawful use of a communication facility.

Defendant Dukes is charged in Count 1 with conspiracy. And his attributable weight is 500 grams of cocaine, a quantity of methamphetamine, and a quantity of heroin. He is also charged in Count 17 with a single count of unlawful use of a communication facility.

The elements of those charges are as follows: For Count 1, which is a conspiracy to distribute cocaine, methamphetamine and heroin, the elements are, one, that there was an agreement between the defendant and another person to distribute and/or possess with intent to distribute, cocaine, cocaine base, methamphetamine and heroin; two, that the defendant knew of this agreement or conspiracy; three, that the defendant knowingly and voluntarily participated in or became a part of this agreement or conspiracy; and four, the defendant is accountable for at least the amount of narcotics charged in the indictment. Again, that being, for McCray, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, and a quantity of heroin.

As to Defendant Cox, we would need to additionally prove that five -- that the amount accountable to him is five kilograms or more of a mixture or substance containing a

detectable amount of cocaine.

As it pertains to Defendant Dukes, the government would be responsible for proving that the amount attributable to Dukes is 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a quantity of methamphetamine, and a quantity of heroin.

As to Count 2, which is McCray being charged in that count, and Counts 5 and 10, in which Cox is being charged with possession with intent to distribute and distribution of various substances, the government would need to prove, one, that the defendant possessed the amount of controlled substance alleged in the indictment; two, that the defendant knew that the substance possessed was a controlled substance under the law at the time of possession; three, that the defendant did so with the intent -- he possessed with the intent to distribute the controlled substance; and four, that the amount possessed or distributed equals at least the amount alleged in the indictment.  And those charges, 28 grams or more of cocaine base.

For Count 3, as to Defendant McCray, and Count 6 as to Defendant Cox, they're both charged with possession of a firearm in furtherance of drug-trafficking, in violation of 18 U.S.C. 924(c), the government would need to prove the following elements:  One, that the defendant committed a federal drug-trafficking crime; two, the defendant knowingly

1　used, carried, or possessed a firearm; and three, that the

2　defendant's use or carrying of the firearm or possession of

3　the firearm was during and in relation to -- or possession --

4　I apologize.  Possession of a firearm was in furtherance of a

5　drug-trafficking crime.

6　　　　　As to Counts 4 as it pertains to Defendant McCray,

7　and Count 7 as it pertains to Defendant Cox, they are both

8　charged with felony possession of a firearm and/or ammunition,

9　the government would need to prove, one, that the defendant

10　knowingly possessed a firearm or ammunition; two, at the time

11　he possessed the firearm or ammunition, the defendant had been

12　previously convicted of a crime, punishable by imprisonment

13　for a term exceeding one year; three, that the defendant knew

14　that he was a felon or prohibited person; four, that the

15　possession of the firearm or ammunition was in or affecting

16　interstate commerce, meaning that the firearm or ammunition

17　was shipped, transported in interstate or foreign commerce,

18　where the firearm and ammunition received was shipped,

19　transported in interstate for foreign commerce.

20　　　　　As to the unlawful use of a communication facility

21　count, which are Counts 16, 17, 18, 20, 21, 22, 23, and 24 and

22　26, 27 and 28, the government would need to prove, one, that

23　the defendant knowingly used a communication facility.  In

24　this instance, for each charge, that would be a cellphone;

25　and, two, with the intent to commit, cause or facilitate the

1    commission of a drug felony; in this case, conspiracy to

2    commit -- to possess with intent to distribute and to

3    distribute narcotics.  Those are the elements.

4              Your Honor, would you like me to proceed with the

5    penalties now?

6              THE COURT:  Sure.  Thank you.

7              MS. STEWART:  As to Count 1, the conspiracy charge

8    for defendants McCray and Cox, as to the weight that is

9    attributable that qualifies for a mandatory minimum under

10   841(b)(1)(A), that is a Class A felony, which, the mandatory

11   minimum is 10 years up to life imprisonment.  The fine is a

12   maximum of $10 million; the supervised release of up to five

13   years; and a special assessment of a hundred dollars.  If the

14   defendant has one or more prior qualifying convictions of a

15   serious drug felony or a serious violent felony, and the

16   government had provided proper notice under 851, it would have

17   been imprisonment of at least 15 years and up to life, a fine

18   of up to $20 million, supervised release up to 10 years, and a

19   special assessment of a hundred dollars.  And if the defendant

20   has two or more prior qualifying convictions, and the

21   government had filed the 851 notifications, it would have been

22   imprisonment of at least 25 years and up to life.

23             Your Honor, the government has not filed 851 notices.

24             THE COURT:  Okay.  Madam Newly Anointed Chief of the

25   Charleston Division U.S. Probation Office, Ms. Frye,

1    congratulations.  And, yes, what are you correcting us on?

2            PROBATION OFFICER:  The supervised release terms are

3    a mandatory minimum.  They're actually up to life.

4            MS. STEWART:  Oh, I apologize.

5            PROBATION OFFICER:  Our minimum, and then up to life,

6    your Honor.

7            THE COURT:  Thank you.  Thank you very much.

8            MS. STEWART:  Thank you for the correction.

9            THE COURT:  All right.  Anything further?

10            MS. STEWART:  Yes, your Honor.

11            THE COURT:  Of course.  Of course.

12            MS. STEWART:  For Count 1, Count 2, Count 5 and Count

13    10, which are both conspiracy and possession with intent to

14    distribute quantities that qualify for the 841(b)(1)(B)

15    weight, those are Class B felonies, with a mandatory minimum

16    of imprisonment of five years up to 40 years, a fine of up to

17    $5 million, supervised release for at least four years,

18    special assessment of a hundred dollars, and if the defendant

19    has one or more prior qualifying convictions, imprisonment of

20    at least 10 years and up to life, a fine up to $8 million,

21    supervised release of up to eight years, and a special

22    assessment of a hundred dollars.

23            As to Count 1 and Count 5, which are conspiracy as

24    well as possession with intent to distribute a C quantity,

25    those are all Class C felonies, which is a maximum period of

1  imprisonment of not more than 20 years, a fine of a million

2  dollars, supervised release for at least three years, special

3  assessment of a hundred dollars, and if the defendant has one

4  or more qualifying convictions, imprisonment of up to 30

5  years, a fine up to $2 million, supervised release of six

6  years, and a special assessment of hundred dollars.

7          As to Counts 3 and 6, which involve possession of a

8  firearm in furtherance of drug trafficking, that is, if it is

9  possessed in furtherance of a drug-trafficking crime, it is a

10 Class A felony with a mandatory minimum term of imprisonment

11 of not less than five years, and a maximum term of life

12 imprisonment consecutive to each and every other count, a fine

13 of up to $250,000, supervised release for five years, and a

14 special assessment of a hundred dollars.

15         And, your Honor, I don't believe any of the

16 enhancements apply in this case, so I'm not going to read

17 those enhancements.

18         As to Count 4 and Count 7, felony possession of a

19 firearm and/or ammunition, these are Class C felonies with

20 imprisonment of not more than 10 years, a fine of up to

21 $250,000, supervised release for three years, special

22 assessment of a hundred dollars, and if the defendant has at

23 least three prior qualifying convictions for a violent felony

24 or serious drug offense, under 18 U.S.C. Section 924(e), a

25 mandatory term of imprisonment of 15 years and a maximum term

of imprisonment of life, a fine of $250,000, and a term of
supervised release of not more than five years in addition to
any term of imprisonment, plus a special assessment of a
hundred dollars.

And as to Count 16, all of the unlawful use of a
communication facility counts, which are 16, 17, 18, 20, 21,
22, 23, 24, 26 and 27 and 28, those are Class E felonies,
which are subject to imprisonment for not more than four
years, a fine of $250,000, supervised release for one year,
and a special assessment of a hundred dollars, and if the
defendant has one or more prior qualifying convictions for
violations of 843, a federal narcotic statute, imprisonment
for not more than eight years, a fine of $250,000, and a term
of supervised release of not more than three years in addition
to any term of imprisonment, plus a special assessment of a
hundred dollars.

THE COURT:  Okay.  You can breathe now.

Okay.  Having heard all of that, and having gone over
your cases thoroughly with your lawyers, do you understand the
nature of the charges against you and the range of possible
punishments, Mr. McCray?

DEFENDANT MCCRAY:  Yes, ma'am.

THE COURT:  And, Mr. Dukes?

DEFENDANT DUKES:  Yes, ma'am.

THE COURT:  And, Mr. Cox?

1          DEFENDANT COX:  Yes, ma'am.

2          THE COURT:  And, do you still want to plead guilty,

3    Mr. McCray?

4          DEFENDANT MCCRAY:  Yes, ma'am.

5          THE COURT:  Mr. Dukes?

6          DEFENDANT DUKES:  Yes, ma'am.

7          THE COURT:  And, Mr. Cox?

8          DEFENDANT COX:  Yes, ma'am.

9          THE COURT:  And there are minimum mandatory sentences

10   in regards to the firearms charges, correct, Madam U.S.

11   Attorney?

12         MS. STEWART:  That is correct, your Honor.

13         THE COURT:  And those are between five and seven

14   years on those charges?

15         MS. STEWART:  I apologize, your Honor.  It's the --

16   are you talking about the 924(c) charges?

17         THE COURT:  Yes.

18         MS. STEWART:  Yes.  There's a mandatory minimum of

19   five years for each of those charges.

20         THE COURT:  Consecutive to --

21         MS. STEWART:  Correct.

22         THE COURT:  -- any other count.

23         MS. STEWART:  Correct.

24         THE COURT:  And any other sentence they might receive

25   on any other count.

1            Is that right, Madam Chief U.S. Probation Officer?

2            PROBATION OFFICER:  Yes, ma'am.

3            THE COURT:  Okay.  Good.  All right.

4            So, do you still want to plead guilty, Mr. McCray?

5            DEFENDANT MCCRAY:  Yes, ma'am.

6            THE COURT:  And, Mr. Dukes?

7            DEFENDANT DUKES:  Yes, ma'am.

8            THE COURT:  And, Mr. Cox?

9            DEFENDANT COX:  Yes, ma'am.

10            THE COURT:  Did you commit this offense, Mr. McCray?

11            DEFENDANT MCCRAY:  Yes, ma'am.

12            THE COURT:  Mr. Dukes?

13            DEFENDANT DUKES:  Yes, ma'am.

14            THE COURT:  Mr. Cox?

15            DEFENDANT COX:  Yes, ma'am.

16            THE COURT:  So, I find each of the defendants fully

17  comprehend and understand the general nature of the charges

18  against them and generally what elements the government would

19  have to prove if a trial were held.  There are no plea

20  agreements.

21            But is there any other understanding or anything of

22  any sort?

23            MS. STEWART:  Your Honor, the only understanding is

24  that the government could have pursued a superseding

25  indictment, and by them pleading today, the government is not

1    going forward with charges as to them in the superseding

2    indictment.

3              THE COURT:  Okay.  Other than that, has anyone

4    promised you what sentence you will receive, Mr. McCray?

5              DEFENDANT MCCRAY:  No, ma'am.

6              THE COURT:  Mr. Dukes?

7              DEFENDANT DUKES:  No, ma'am.

8              THE COURT:  Mr. Cox?

9              DEFENDANT COX:  No, ma'am.

10             THE COURT:  Do you still want to plead guilty, Mr.

11   McCray?

12             DEFENDANT MCCRAY:  Yes, ma'am.

13             THE COURT:  Mr. Dukes?

14             DEFENDANT DUKES:  Yes, ma'am.

15             THE COURT:  Mr. Cox?

16             DEFENDANT COX:  Yes, ma'am.

17             THE COURT:  Has anyone promised any of you anything

18   or held out any hope of a reward to get you to plead guilty,

19   Mr. McCray?

20             DEFENDANT MCCRAY:  No, ma'am.

21             THE COURT:  Mr. Dukes?

22             DEFENDANT DUKES:  No, ma'am.

23             THE COURT:  Mr. Cox?

24             DEFENDANT COX:  No, ma'am.

25             THE COURT:  Has anyone threatened you, or pressured

1   you, used force or intimidated you to try to get you to plead

2   guilty, Mr. McCray?

3          DEFENDANT MCCRAY:  No, ma'am.

4          THE COURT:  Mr. Dukes?

5          DEFENDANT DUKES:  No, ma'am.

6          THE COURT:  Mr. Cox?

7          DEFENDANT COX:  No, ma'am.

8          THE COURT:  Have you each had enough time to decide

9   whether you really do want to plead guilty, Mr. McCray?

10         DEFENDANT MCCRAY:  Yes, ma'am.

11         THE COURT:  Mr. Dukes?

12         DEFENDANT DUKES:  Yes, ma'am.

13         THE COURT:  Mr. Cox?

14         DEFENDANT COX:  Yes, ma'am.

15         THE COURT:  Are you pleading guilty of your own free

16   will and accord, Mr. McCray?

17         DEFENDANT MCCRAY:  Yes, ma'am.

18         THE COURT:  Mr. Dukes?

19         DEFENDANT DUKES:  Yes, ma'am.

20         THE COURT:  Mr. Cox?

21         DEFENDANT COX:  Yes, ma'am.

22         THE COURT:  All right.  Madam U.S. Attorney, I'd ask

23   you to summarize the evidence for us.

24         MS. STEWART:  Yes, your Honor.

25         Had the government's case proceeded to trial, it

would've proven the following facts beyond a reasonable doubt: Specifically, as to Count 1, which is the conspiracy charge, the government would have proven that, beginning on an exact date unknown to the government but from at least in or around January 2020, and continuing until at least February 24th, 2022, which was the time of the defendant's arrest, in the District of South Carolina and elsewhere, the defendants, Frederick Wendell McCray, a/k/a, "Dub;" Tyrone Cox, a/k/a, "T" or "Player;" Kevin Williams Dukes, a/k/a, "KD," and other conspirators, known and unknown to the government, knowingly and intentionally did combine, conspire, agree and have a tacit understanding with each other and with others both known and unknown to the government, to knowingly, intentionally and unlawfully possess with intent to distribute and to distribute marijuana and heroin, both Schedule I controlled substances, and cocaine, cocaine base, commonly known as "crack cocaine;" and methamphetamine, all Schedule II controlled substances.

Specifically, a federal investigation revealed that at all times during the relevant period, Frederick McCray was the leader of a drug-trafficking organization based in a neighborhood called Ten Mile in North Charleston, South Carolina.  McCray had an extensive clientele base and was involved in the distribution of cocaine, crack cocaine, heroin, methamphetamine, and marijuana to numerous buyers and associates.  McCray ensured that members of the

drug-trafficking organization, to include Kevin Dukes and others both named and unnamed in the indictment, were supplied with steady amounts of cocaine and crack cocaine for their own distribution.  McCray relied on these individuals to distribute his cocaine.  McCray also manufactured multiple ounce quantities of crack cocaine and had several locations that he used to cook his product.

During the relevant time period, McCray got his supply of cocaine from Tyrone Cox, as well as others, obtaining ounce quantities of cocaine at a time for redistribution.  During the relevant time period, another defendant named in the indictment supplied and attempted to supply methamphetamine and other narcotics to McCray and other members of the drug-trafficking organization.  As part of this federal investigation, the Federal Bureau of Investigation -- or FBI -- obtained Court authorization to wire-tap Frederick McCray's known cellphone, referred to as "target phone one," for 60 days; Kevin Dukes' known cellphone, referred to as "target phone two" for 30 days; and Tyrone Cox's known cellphone, referred to as "target phones five and six," for 30 days.

Had the government proceeded to trial, it would have introduced the testimony of an agent, qualified as a drug expert, to testify as to certain commonly known street terms, or code language, for cocaine, cocaine base -- also known as

1    crack cocaine -- methamphetamine and heroin, as well as the

2    weights and prices of these narcotics, and that the

3    defendants, McCray, Cox and Dukes, each used intercepted wire

4    communications to discuss the price and quantity of narcotics

5    being distributed, housed, cooked and supplied in furtherance

6    of the drug-trafficking conspiracy.

7        Agents would have testified, and the government would

8    have introduced evidence, that, based on these calls, physical

9    surveillance, statements of cooperators, confidential

10   informants, controlled buys involving the defendants and drug

11   seizures, that the following drug amounts are attributable to

12   each defendant:  Specifically, Frederick Wendell McCray,

13   a/k/a, "Dub," was responsible for five kilograms or more of

14   cocaine, 500 grams or more of methamphetamine, and a quantity

15   of heroin.  Defendant, Kevin Williams Dukes, was responsible

16   for 500 grams or more of cocaine, a quantity of

17   methamphetamine, and a quantity of heroin.  And Tyrone Cox is

18   responsible for five kilograms or more of cocaine.

19             THE COURT:  Okay.

20             MS. STEWART:  That's just Count 1.

21             THE COURT:  Oh.  Oh, lord.  I can see why you wanted

22   to do all these at once.  Okay.  I'm sorry.  Do what you have

23   to do.

24             MS. STEWART:  No.  That's fine.

25             As to Counts 2, 3 and 4, the government would have

established the following facts beyond a reasonable doubt:

THE COURT: And you can go slow. We're not in any big hurry.

MS. STEWART: Okay.

THE COURT: Just because I have a major hearing at 3:00 -- I'm just teasing. They're all equally important. Just take your time. It's all good. The court reporter is the most important person in this room.

MS. STEWART: Yes, your Honor.

On October 20th, 2020, the North Charleston Police Department executed a search warrant at 1448 Bexley Street, the known residence of Frederick McCray. Prior to making contact at the residence, detectives conducted surveillance and observed McCray leaving the residence in a black Buick LaCrosse as the driver and sole occupant of the vehicle. After driving away from the residence, McCray stopped down the street at 4327 Spruill Avenue, where detectives made contact with him. McCray then openly stated to detectives that he had crack and a weapon in the vehicle and gave consent to search the vehicle. During the stop, McCray confirmed that he knew the firearm was in the glove box and that the crack was his.

During a search of the vehicle, officers recovered a clear bag containing approximately 74 grams of an off-white rock substance and a digital scale from the center console, as well as a firearm, which is a Ruger, model 5.7 times, a

28-millimeter pistol, loaded with the same millimeter
ammunition in the glove box.  Two cellphones were also
recovered from the passenger seat of this vehicle.  Officers
also recovered $1,166 in U.S. currency from McCray's person.
Lab results confirmed -- and had the government gone to trial,
they would've proven beyond a reasonable doubt -- that the
rock substance seized from McCray was 64.77 grams net weight
of cocaine base, also known as crack cocaine.

Evidence that McCray possessed the firearm in
furtherance of a drug-trafficking crime are as follows:  The
loaded firearm was physically proximate to the distribution
quantities of crack cocaine.  There was a large amount of U.S.
currency and a digital scale, as well as the fact that McCray
was a prohibited person carrying a firearm registered in his
girlfriend's name.  This is also supported by the fact that
there were several wire communications of McCray, where he is
repeatedly discussing the need to carry firearms and supply
his drug-trafficking organization with firearms to protect the
drug-trafficking organization and drug turf.

As to the 922(g) charge, the government would have
proven beyond a reasonable doubt that McCray has numerous
felony convictions that prohibit him from possessing a
firearm, specifically including a 2004 conviction for
distribution of cocaine, and a 2008 conviction for possession
with intent to distribute cocaine base.  Additionally, for his

1    2008 and 2004 felony convictions, McCray signed sentencing

2    sheets acknowledging the Court's imposition of a sentence

3    exceeding one year.  And McCray also signed at least three Gun

4    Control Act forms, dated April 5th, 2016; February 16th, 2006;

5    and December 14th, 1999, acknowledging that he was prohibited

6    from possessing a firearm or ammunition due to his status as a

7    convicted felon.  Law enforcement also confirmed with the

8    South Carolina Department of Probation Parole and Pardon

9    Services, that McCray has not received a pardon for any of his

10   prior convictions.

11          As to the 922(g) charge, the government also proved

12   that, based on an examination conducted by an ATF special

13   agent on December 15th, 2021, both the firearm and ammunition

14   recovered from McCray's vehicle and residence were not

15   manufactured in South Carolina, and, therefore, traveled in

16   interstate and/or foreign commerce.  The agent also further

17   examined the firearms and ammunition recovered and determined

18   that they met the federal definitions of firearms and

19   ammunition.

20          As to Counts 5, 6, 7 and 8, as to Defendant Cox, the

21   government would have proven beyond a reasonable doubt the

22   following facts:  On October 28th, 2021, law enforcement

23   executed a federal search warrant on two adjacent properties

24   that Cox and a coconspirator used to store kilogram quantities

25   of cocaine.  These locations were 2316 Meeting Street Road in

1    North Charleston, which was also referred to as "Granny's

2    House," and 2318 Meeting Street Road, which was a vacant lot

3    that had two trailers on it, one open and one enclosed.  In

4    wire interceptions, Cox and his coconspirator specifically

5    discussed kilograms of quantities of cocaine at the residence

6    and trailer on these properties.  There were also multiple

7    intercepted phone calls of Cox telling a buyer to meet him at

8    this location to supply them with narcotics.

9            And on October 28th, 2021, agents intercepted calls

10   indicating that Cox was going to sell cocaine to another

11   unknown male.  Agents then observed Cox going in and out of

12   his stash house and trailer.  Cox then got into his vehicle,

13   presumably to meet the unknown buyer.  Agents coordinated with

14   the North Charleston Police Department to conduct a vehicle

15   stop of Cox.  And a subsequent search when Cox was detained

16   revealed small quantities of crack cocaine recovered from the

17   scene.  And during a search, they also recovered two

18   cellphones from Cox's vehicle that were later identified as

19   corresponding to target phones five and six.

20           During the execution of the search warrant, officers

21   recovered suspected supplies for cooking crack cocaine, a

22   third cell phone, cocaine powder, and suspected cocaine base

23   inside the stash house, as well as a backpack containing

24   suspected cocaine base and other narcotics in the enclosed

25   trailer.  Lab results confirmed -- and if the government went

to trial, they would've proven beyond a reasonable doubt --
that the narcotics seized from Cox included 104.03 grams of
net weight of cocaine base, also known as crack cocaine, and
172.02 grams of net weight of cocaine powder, for a total of
276 grams of cocaine total.

An unloaded Palmetto State Armory model PA-15 5.56
caliber pistol with two extended magazines and a box of 5.56
ammunition was recovered from the attic of this residence that
was being used as a stash house above and in close proximity
to the recovered guns. Had the government proceeded to trial,
they would have introduced the following evidence to show that
Cox possessed this firearm in furtherance of a
drug-trafficking crime, specifically that the firearm was
recovered in Cox's trap house, where Cox and his coconspirator
would meet to store and pick up their supply of cocaine, cook
powdered cocaine to convert it into cocaine base, and engaged
in various drug transactions. Cox was also prohibited from
possessing a firearm. Cox did not have permission from the
owner of the property to reside at the house, providing
further evidence that Cox possessed the firearm in furtherance
of drug trafficking. And additionally, in at least one call,
Cox and a coconspirator discussed gang violence related to
drug activity and the need to protect themselves in case
someone decided to violate them, by referring to ammunition,
saying, "We need to start having ammunition laying around,"

1   and "That big mother-F-ing Bertha ain't gonna come out of the

2   addict until a mother-f-er violates."  This call clearly

3   establishes that Cox had knowledge of the firearm and

4   ammunition in the attic and were discussing the need to have

5   it ready in the event that someone tried to interfere with

6   their drug-trafficking organization.

7           As to the 922(g) charge, Cox had several prior felony

8   convictions that prohibit him from possessing a firearm or

9   ammunition.  These include a 2012 conviction for trafficking

10  cocaine base, a 2012 conviction for distribution of cocaine

11  base, a 2008 conviction for possession with intent to

12  distribute cocaine, and a 2004 conviction for assault on a

13  police officer.  Additionally, four of these felony

14  convictions, Cox had signed sentencing sheets acknowledging

15  the Court's imposition of a sentence exceeding one year.  Cox

16  has also signed at least five different Gun Control Act forms,

17  dated in 2002, 2003, 2005, 2009 and 2015, acknowledging that

18  he was prohibited from possessing a firearm or ammunition due

19  to his status as a convicted felon.  Law enforcement also

20  confirmed with the South Carolina Department of Probation

21  Parole and Pardon Services that, as of November 17th, 2021,

22  Cox had not received a pardon for any of his prior

23  convictions.

24          Further, the government would have proven that, on

25  December 15th, 2021, an ATF agent examined the ammunition

recovered from the attic and in the possession of Cox and
determined that this ammunition was not manufactured in South
Carolina and, therefore, traveled in interstate and/or foreign
commerce.  He also examined the firearm and ammunition
recovered and determined that they met the federal definitions
of firearms and ammunition.

As to Count 10, for Mr. Cox, the government would
have established the following facts beyond a reasonable
doubt:  On October 18th, 2021, the defendant, Demetric Gantt,
called Tyrone Cox, his narcotic supplier, to purchase 5 ounces
of cocaine base, also known as crack cocaine, for
redistribution.  This phone call was intercepted pursuant to a
court order authorizing the interception of wire
communications on Cox's cellphone.  Shortly after this call,
law enforcement conducted physical surveillance of Gantt and
observed him meeting with Cox at the parking lot of
Burlington's at Northwoods Mall in North Charleston, South
Carolina.

THE COURT:  Okay.  Hang on.  Time out.

If you guys want to sit down, y'all can sit down.

MS. STEWART:  Getting close, your Honor.

THE COURT:  All right.  They've just been standing a
long time there in shackles and all that.

DEFENDANT COX:  Thank you, your Honor.

THE COURT:  You're welcome.

1          All right.  Go ahead.

2          MS. STEWART:  The physical surveillance also was

3   captured on video.  Gantt's Dodge Challenger pulled up to the

4   parking lot, and then Cox's black Dodge Ram pulled up near

5   him.  Video surveillance captured Gantt going into Cox's truck

6   to conduct the drug transaction.  Gantt was then observed

7   conducting a followup deal with an unidentified third party.

8   North Charleston Police Department then conducted a traffic

9   stop of Gantt immediately after he left and recovered three of

10  the 5 ounces of crack cocaine.  Lab results confirmed that had

11  the government gone to trial, they would have proven beyond a

12  reasonable doubt that the rock substance seized from Gantt and

13  supplied by Cox was 79.28 grams net weight of cocaine base,

14  also known as crack cocaine.

15         As to the wire communication counts, the government

16  also would have proven that, on or about the dates that will

17  be detailed by the government, in the district of South

18  Carolina, the named defendants knowingly and intentionally did

19  use a communication facility, to wit, a cell phone, to

20  facilitate the commission of a felony under the Controlled

21  Substances Act, to wit, conspiracy to possess with intent to

22  distribute, possession with intent to distribute, and

23  distribution of controlled substances.  First, as to Count 16,

24  there was a recorded call transmission on August 11th, 2021,

25  labeled as "session 1861 on target phone one," which recorded

1    a communication between coconspirators Brown and Frederick

2    McCray.  In this call, Frederick McCray and Brown are

3    discussing the police being on scene, and Coconspirator Brown

4    is warning McCray, who is about to engage in a drug

5    transaction, that he is going towards where the police are at,

6    and Brown was advising McCray in this call to go a different

7    direction so that he is not apprehended by police.

8            As to Count 17, this is a call that was intercepted

9    on August 20th, 2021, session number 3757 on target phone one

10   between McCray and Kevin Dukes.  And in this call, Dukes is

11   asking McCray to supply him with an ounce, referred to as

12   "one" on the call of cocaine base, to resell for 1100 dollars,

13   referred to in the call as "eleven."  McCray tells Dukes to

14   meet him to pick up the narcotics.

15           In Count 18, in a call that was intercepted on August

16   20th, 2021, session number 3827 on target phone one, between

17   Frederick McCray and coconspirator, LaJustin Williams.  In

18   that call, Williams is discussing how he has five bricks,

19   which was code for pounds of "ice" or "cream," which is known

20   commonly as methamphetamine, that he wanted McCray to help him

21   sell.  Following this call, agents followed McCray to

22   Williams' house, where the call indicated they discussed

23   prices of Williams's methamphetamine on the same date.

24           As to Count 20, which was a call that was intercepted

25   on August 28th, 2021, session number 6042 on target phone one,

between Frederick McCray and coconspirator, Terrell Myers,
they are discussing the fact that -- McCray is discussing the
fact that coconspirator, LaJustin Williams, also known as
"Smurf," has six bricks of ice that he can't sell and he wants
Myers' and McCray's drug conspiracy, or drug-trafficking
organization, to sell that ice.

For Count No. 21, the call that was intercepted on
September 3rd, 2021, was session number 7584 on target phone
five.  It's between McCray and Tyrone Cox, which is discussing
-- McCray is asking Cox to supply him with cocaine for two
narcotic sales, one for an ounce of cocaine base, which is
referred to in the call as "hard," for 1400; and another for
an ounce and a half of cocaine powder, which is referred to in
the call as "soft."  In response, Cox says that he has to open
up a kilo, which he refers to as "the shit" to complete the
sale.

As to Count 22, which is also a wire count, it was
intercepted on September 14th, 2021, session number 9536 on
target phone one, between McCray and Co-Defendant Smalls.
They are discussing -- McCray is asking Smalls if he has
narcotics for sale.  Smalls tells McCray that all he has left
is 7 grams of powdered cocaine, which is referred to on the
call as "clean;" 28 grams of crack cocaine, which on the call
is referred to as "Turkey" and "made" *(phonetic)* as well.
Earlier calls to Cox and others around that time indicate that

McCray was out of cocaine, which was referred to as "product," and needed to buy some from Smalls. Shortly thereafter, Smalls was observed and filmed by agents as he arrived to McCray's trap house to sell cocaine.

As to Count 23, it's an intercepted call on September 15th, 2021, session number 9788 on target phone one, between McCray and coconspirator, Clarence Walker. Walker was surveilled on numerous occasions at a stationary pole camera but specifically the day before this call. And in this call, he is talking about the fact that he sold all of his crack and needs a resupply from McCray.

As to Count 24, which is an intercepted count, on September 21, 2021, session number 10967, target phone one, between McCray and coconspirator, Myers, in the call, McCray is discussing how Myers needs to keep selling ounces of cocaine to an individual named "Blaze," because he consistently buys ounces, which he refers to as "ones." Myers confirms that he recently gave Blaze an ounce for 950.

In Count 26, an intercepted call on October 8, 2021, session number 197, target phone five, between McCray and Cox, McCray is discussing buying an ounce, which he refers to as "one," of cocaine for redistribution. Cox is complaining about having to open a kilo, which he refers to as "the shit" *(phonetic)* or "brick" of cocaine to supply McCray.

As to Count 27, which was intercepted on October

1  18th, 2021, session number 2931, target phone six, between Cox

2  and coconspirator, Demetric Gantt, in the call Gantt is

3  telling Cox that he needs two ounces of cocaine base to sell

4  right away, which he referred to two of them, saying: I'm

5  going to resort them real fast for somebody. And then he

6  needed an additional three ounces for himself: "Three of them

7  things for me." After this call, law enforcement conducted

8  the physical surveillance that was described previously that

9  is the basis for Count 10.

10  As to Count 28, it's an intercepted call on October

11  24th, 2021, session number 1611, target phone five, between

12  Cox and his coconspirator, Tyrone Wilson. They are discussing

13  -- Cox is telling Wilson that he needs to meet him to access

14  multiple kilograms of cocaine, which he refers to in the call

15  as "Djangos" or "keys" for distribution that Wilson is

16  holding.

17  THE COURT: Okay. And y'all can stay seated if you'd

18  like.

19  Mr. McCray, do you agree with the prosecutor's

20  summary of what you did?

21  DEFENDANT MCCRAY: Yes, ma'am.

22  THE COURT: Mr. Dukes?

23  DEFENDANT DUKES: Yes, ma'am.

24  THE COURT: And, Mr. Cox?

25  DEFENDANT COX:

1       THE COURT:  And do any of y'all have any questions
2  for the prosecutor, Mr. McCray?
3       DEFENDANT MCCRAY:  No, ma'am.
4       THE COURT:  Mr. Dukes?
5       DEFENDANT DUKES:  No, ma'am.
6       THE COURT:  And, Mr. Cox?
7       DEFENDANT COX:  No.
8       THE COURT:  Have you understood all my questions, Mr.
9  McCray?
10      DEFENDANT MCCRAY:  Yes, ma'am.
11      THE COURT:  Mr. Dukes?
12      DEFENDANT DUKES:  Yes, ma'am.
13      THE COURT:  And, Mr. Cox?
14      DEFENDANT COX:  Yes, ma'am.
15      THE COURT:  Do you have any questions for me before
16 we go on, Mr. McCray?
17      DEFENDANT MCCRAY:  No, ma'am.
18      THE COURT:  Mr. Dukes?
19      DEFENDANT DUKES:  No, ma'am.
20      THE COURT:  And, Mr. Cox?
21      DEFENDANT COX:  No.
22      THE COURT:  All right.  And how do you wish to plead,
23 Mr. McCray?
24      DEFENDANT MCCRAY:  Guilty.
25      THE COURT:  And, Mr. Dukes?

1          DEFENDANT DUKES:  Guilty.

2          THE COURT:  And, Mr. Cox?

3          DEFENDANT COX:  Guilty.

4          THE COURT:  And are you guilty, Mr. McCray?

5          DEFENDANT MCCRAY:  Yes, ma'am.

6          THE COURT:  Mr. Dukes?

7          DEFENDANT DUKES:  Yes, ma'am.

8          THE COURT:  And, Mr. Cox?

9          DEFENDANT COX:  Yes, ma'am.

10         THE COURT:  It's the finding of the Court in the

11   cases of United States vs. Frederick Wendell McCray, and Kevin

12   William Dukes, and Tyrone Cox, that each defendant is fully

13   competent and capable of entering informed pleas.  Their pleas

14   are knowing and voluntary pleas, supported by an independent

15   basis in fact and containing each of the essential elements of

16   the offense.  Their pleas are accepted, and they're now

17   adjudged guilty of those offenses.

18         So, you all are required to appear for sentencing.

19   And written presentence reports are going to be prepared now

20   by probation.  So, you're going to be asked to give

21   information to the officers for those reports.  But your

22   lawyers can be present with you during any questioning by the

23   U.S. probation officers, if you wish.  And you and your

24   lawyers will be able to read those presentence reports and

25   file any objections to them prior to sentencing.  And I'll be

happy to hear from each of you or your family members at the sentencing hearings.  Okay?  So, you're all now referred on to probation.  Thank you.

Anything else?

MS. STEWART:  No, your Honor.

THE COURT:  Okay.

MR. TOPOREK:  May I approach, your Honor?

THE COURT:  Yes.

\* \* \* \* \* \*

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/Lisa D. Smith,                    6/7/2023
_____    _____
Lisa D. Smith, RPR, CRR              Date